UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ANTHONY D. AZUKAS,                :
                                 :
        Plaintiff,               :
                                 :
v.                               :     Case No. 3:14-cv-721 (RNC)
                                 :
LEO ARNONE, et al.,              :
                                 :
        Defendants.              :


RULING AND ORDER

Plaintiff Anthony Azukas, a Connecticut inmate proceeding
pro se, brings this action pursuant to 42 U.S.C. § 1983 against
Department of Correction officials claiming that his
constitutional rights were violated when DOC officials prevented
him from receiving two books.  He contends that the books were
rejected based on a DOC regulation that is unconstitutionally
vague.  Defendants have moved for summary judgment on the grounds
that there was no violation of plaintiff's rights and they are
entitled to qualified immunity.  I agree that a jury would have
to conclude that there was no violation of plaintiff's
constitutional rights because the regulation at issue is
reasonably related to legitimate penological interests.  See
Duamutef v. Hollins, 297 F.3d 108, 113 (2d Cir. 2002).

I.  Background

The parties' submissions show the following.  In April 2011,
plaintiff was confined at Garner Correctional Institution.  Early

1

that month, a shipment of six books was received at Garner from the Edward R. Hamilton Bookseller Company for delivery to the plaintiff.  After review by prison staff, four of the books were released to him.  The other two - <u>New York Times Guide to Essential Knowledge</u> and <u>United States Supreme Court Decisions, 1778-1996</u> - were rejected.

Plaintiff was given a "Publication Rejection Notice" (form CN 100702) for each of the two books.  (Defs.' Mot. Summ. J. Ex. C, D, ECF Nos. 31-7, 31-8); (Pl.'s Opp'n Summ. J. Ex. I, K, at 87, 100, ECF No. 44-1).  He attempted to appeal the rejections. In response to his submissions, he received a letter from Kim Weir, Director of Security, with information regarding DOC's decision to reject one of the books.  (Defs.' Mot. Summ. J. Ex. E, ECF No. 31-9); (Pl.'s Opp'n Summ. J. Ex. J, at92, ECF No. 44-1).  Plaintiff subsequently ordered and received additional books, including one order of nine books, all of which were released to him.

Defendants contend that the two books in question were rejected in accordance with DOC Administrative Directive 10.7(N)(5), which governs DOC inmates' incoming publications. This Directive provides that prison officials "may set limits locally (for fire, sanitation, housekeeping, security or disciplinary reasons) on the number or volume of publications an inmate may receive . . . in accordance with Administrative

2

Directive[] 6.10, Inmate Property."  (Defs.' Mot. Summ. J. Ex. A,
at 12, ECF No. 31-5); (Pl.'s Opp'n Summ. J. Ex. F, at 76, ECF No.
44-1).

The Publication Rejection Notices plaintiff received
indicate that the two books were rejected on the basis of their
"size," as the books were "very large/thick."  (Defs.' Mot. Summ.
J. Ex. C, D, ECF Nos. 31-7, 31-8); (Pl.'s Opp'n Summ. J. Ex. I,
K, at 87, 100, ECF No. 44-1).  The letter he received from
Director of Security Weir states that the book was rejected
pursuant to the "Quantity Limitations" provision of Directive
10.7.  (Defs.' Mot. Summ. J. Ex. E, ECF No. 31-9); (Pl.'s Opp'n
Summ. J. Ex. J, at 92, ECF No. 44-1).

II.  <u>Discussion</u>

Summary judgment may be granted when there is no genuine
issue of material fact and the moving party is entitled to
judgment as a matter of law.  <u>Celotex Corp. v. Catrett</u>, 477 U.S.
317, 322 (1986).  To avoid summary judgment, the non-moving party
must point to evidence that would permit a jury to return a
verdict in his or her favor.  <u>Anderson v. Liberty Lobby, Inc.</u>,
477 U.S. 242, 252 (1986).  In determining whether this standard
is met, the evidence must be viewed in the light most favorable
to the non-moving party.  <u>Id.</u> at 255.  When the non-moving party
is proceeding <u>pro se</u>, that party's filings are read liberally and
interpreted to raise the strongest arguments they suggest.  <u>See</u>

Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).

    A.   Rejection of Plaintiff's Books

    The First Amendment protects a prisoner's right to the "free flow" of incoming mail. Johnson v. Goord, 445 F.3d 532, 534 (2d Cir. 2006)(quoting Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003). However, this right is not absolute, and prison officials may regulate a prisoner's right to receive mail as long as they do so in a way that is "reasonably related to legitimate penological interests." Id. (quoting Rodriquez v. James, 823 F.2d 8, 12 (2d Cir. 1987)).

    In reviewing the validity of prison regulations, courts apply the factors laid out by the Supreme Court in Turner v. Safley,: (1) whether there is a "valid, rational connection" between the regulation and the legitimate government interest put forward to justify it; (2) whether inmates have alternative means of exercising the burdened right; (3) what impact accommodating the right would have on guards, other inmates, and prison resources generally; and (4) how the regulation compares to proposed alternatives. 482 U.S. 78, 89 (1987); Johnson, 445 F.3d at 535; see also Shakur v. Selsky, 391 F.3d 106, 113 (2d Cir. 2004).

    Plaintiff contends that Administrative Directive 10.7(N)(5) is unconstitutionally vague on its face and as applied to him. The Turner factors apply to both facial and as-applied

challenges.  See United States v. Reid, 369 F.3d 619, 626 (1st
Cir. 2004).  Applying these factors, I agree with defendants that
the Directive is reasonably related to legitimate penological
interests and therefore passes constitutional muster.

The first factor is satisfied because there is a rational
connection between the regulation and legitimate government
interests.  Directive 10.7(N)(5) explicitly identifies "fire,
sanitation, housekeeping, security or disciplinary reasons" as
acceptable justifications for quantity limits.  (Defs.' Mot.
Summ. J. Ex. A, at 12, ECF No. 31-5); (Pl.'s Opp'n Summ. J. Ex.
F, at 76, ECF No. 44-1).  Under the relevant case law, the
state's  interest in protecting prison security is "legitimate
beyond question" and "central to all other correctional goals."
Shakur, 391 F.3d at 113-14 (quoting Thornburgh v. Abbott, 490
U.S. 401, 415, (1989)).  Moreover, the legitimacy of security as
a governmental objective is confirmed by the neutrality of this
regulation, as it distinguishes between publications "solely on
the basis of their potential implications for prison security,"
rather than "invit[ing] prison officials . . . to apply their own
personal prejudices and opinions" to judge the content of
publications.  Id. (quoting Thornburgh, 490 U.S. at 415-416); see
also Sadler v. Lantz, No. 3-07-cv-1316 (CFD), 2011 WL 4561189 at
*5 (D. Conn. Sept. 30, 2011) ("Administrative Directives 10.7 and
6.10 are neutral in character.").  Allowing prison authorities

"broad discretion" regarding quantity limits on incoming publications is rationally related to the goal of prison security.  Shakur, 391 F.3d at 114-15; see also Leachman v. Thomas, 229 F.3d 1148 (Table), 2000 WL 1239126 (5th Cir. 2000)(per curiam) (upholding limit on number of publications inmates can possess in order to avoid fire hazards).  The other Turner factors also support the validity of Directive 10.7(N)(5). The quantity restriction leaves open other avenues for inmates to effectively exercise their First Amendment rights because the regulation still "permits a broad range of publications to be read."  Shakur, 391 F.3d at 114 (quoting Thornburgh, 490 U.S. at 418).  Allowing inmates to possess an unlimited quantity of publications would result in less safety for everyone.  And plaintiff has not identified any "obvious, easy alternatives" to the quantity limitation that protect the same governmental interests.

    Plaintiff's as-applied challenge fares no better.  He argues that DOC officials applied Directive 10.7(N)(5) in an arbitrary and irrational way.  In support of this argument, he submits two affidavits by other inmates stating that they have been allowed to receive and retain large hardcover books similar to the two books in question.  (Pl.'s Opp'n Summ. J. Ex. P, at 118, ECF No. 44-1).  He also submits product specifications to show that he was permitted to receive a dictionary of similar size.  (Pl.'s

Opp'n Summ. J. Ex. J, at 97, ECF No. 44-1).  In addition, he
parses the regulation to argue that it only authorizes limits on
the total amount of publications that an inmate may have at any
given time.

Plaintiff's arguments are unavailing.  That the regulation
allows DOC personnel to operate within a wide range of discretion
does not undermine its validity.  As discussed above, in the
context of prison security, regulations regarding publications
that give prison officials "broad discretion" are appropriate.
Shakur, 391 F.3d at 114; see also Sadler, 2011 WL 4561189 at *2
(upholding Directives 10.7 and 6.10 because defendants' policy
pursuant to the directives did not "suppress inmate expression,"
but rather was "concerned with increasing safety").  Applying the
regulation in a way that prevents inmates from receiving books of
a size and volume that implicate safety and security concerns is
not unreasonable.  Shakur, 391 F.3d at 113.

B.    Compliance with DOC Policies

Plaintiff's claims that his constitutional rights were
violated because DOC officials did not comply with proper
procedures.  Even assuming a jury could find that DOC staff used
the wrong forms to notify plaintiff of the rejections or returned
the books to the distributor prematurely, as he alleges, it does
not follow that they violated his constitutional rights.  The due
process inquiry is not whether prison regulations are followed

with absolute precision, but whether adequate process was provided.  See Shakur, 391 F.3d at 118-19.  Because plaintiff was given notice of the rejection of the books and a reasonable opportunity to protest, his claim does not raise a triable issue.  See Klimas v. Lantz, No. 3:08CV694 WWE, 2012 WL 3611018, at *6 (D. Conn. Aug. 21, 2012), aff'd, 531 F. App'x 6 (2d Cir. 2013) (rejecting due process challenge to Directive 10.7); Starr v. Coulombe, 368 F. App'x 156, 158 (1st Cir. 2010)(defendants' shortening of appeal period under prison mail policy would be "at best a violation of state law"; under federal law, plaintiff was entitled only to a "reasonable opportunity to protest the denial of his mail" (citing Bonner v. Outlaw, 552 F.3d 673, 676 (8th Cir. 2009))); Wickner v. McComb, No. CIV. 09-1220 DWF/JJK, 2010 WL 3385079, at *13 (D. Minn. July 27, 2010), report and recommendation adopted, No. CIV. 09-1220 DWF/JJK, 2010 WL 3385082 (D. Minn. Aug. 23, 2010) ("[T]he failure to follow prison regulations does not, by itself, deny a prisoner due process.").

III. Conclusion

Accordingly, the defendants' motion for summary judgment [ECF No. 31] is granted.  The Clerk may enter judgment in favor of the defendants and close the file.

So ordered this 31st day of March 2017.

```
                              _____/s/ RNC_____
                                    Robert N. Chatigny
                                Unietd States District Judge
```